UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON MATTHEWS,

        Plaintiff,

v.

ZENCO COLLECTIONS LLC,
ZENCO PORTFOLIO MANAGEMENT INC.,
PREMIER HOLDINGS GROUP,
ADAM MICHAEL PASTERNAK,
STEPHEN GRAY MCFAYDEN,
STUART ADAM HOLLINGSWORTH,
RYAN CHRISTOPHER ROGAN,
NANCI DENISE RAMSEY,
ANGEL MARIE RODRIGUEZ,
EMERSON LEE ABBOTT, and
DEVILLE ASSET MANAGEMENT LTD,

        Defendants.

_____/

## COMPLAINT

**I.      Introduction**

1.      Plaintiff is a victim of credit identity theft, whose stolen personal and financial

information was used to create a counterfeit credit card account and fake debt. Defendants are

debt collectors and credit identity thieves who acquired and used the stolen information and

counterfeit account to contact and falsely threaten plaintiff with litigation, prosecution and other

adverse consequences, and extort the payment of money from plaintiff.

2.      Defendants have violated the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. § 1692 *et seq.,* and Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721

*et seq*.

3. Defendants, along with other entities and individuals to be identified in discovery, are involved in a large, elaborate, and ongoing scheme to contact consumers across the country and falsely threaten litigation, prosecution and other adverse consequences unless the consumers pay money to defendants to supposedly satisfy counterfeit, paid, or time-barred debts. Defendants' scheme is sometimes known as "The Shakedown" or "The Shake."

4. These schemes are epidemic and are operated by thousands of entities located in and around Los Angeles, California, Jacksonville and Miami, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South Carolina.

5. On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015**.**

6. Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity

Theft. See also, Consumer Financial Protection Bureau v. Douglas MacKinnon et al., U.S. District Court, Western District of New York (Buffalo), Case No. 1:16-cv-00880FPG, filed November 2, 2016, in which the government alleges that the defendants cheated thousands of consumers out of millions of dollars by running the same type of scam that is described in this complaint.

7.     The Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, makes it a felony to "knowingly transfer, possess, or use, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law . . . ." The act defines a "means of identification" to include an individual's "name, social security number, date of birth," and other information.

## II.     Jurisdiction

8.     The Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331.

## III.    Parties

9.     Plaintiff Jason Matthews is an adult, natural person. Mr. Matthews is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Mr. Matthews is a "person" as the term is defined and used in the DPPA.

10.    Defendant Zenco Collections LLC ("Zenco") is an active Texas limited liability company, TIN 3205810xxx, formed on or about August 21, 2015, and purportedly doing business at 903 North Bowser Road, Suite 250, Richardson, Texas 75081. Zenco uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.

Zenco regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Zenco is a "debt collector" as the term is defined and used in the FDCPA.

11.     According to the Better Business Bureau, Zenco Collections LLC, is a debt collection agency, P.O. Box 851733 Richardson, Texas 75081, telephone numbers 469-899-8909, 469-899-8901 and 844-368-6626. The BBB website contains a warning that dozens of consumers have filed written complaints with the BBB, stating that Zenco "uses threats of prosecution, arrest, and/or garnishment for debts to collect on debts as old as 10 years and the firm fails to validate the debts upon consumer request."

12.     Zenco through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

13.     Defendant Zenco Portfolio Management Inc. ("ZPM") is an active Delaware corporation, TIN 3206728xxxx, formed on or about February 6, 2017, authorized to transact business in Texas, and purportedly doing business at 903 North Bowser Road, Suite 250, Richardson, Texas 75081. ZPM uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. ZPM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. ZPM is a "debt collector" as the term is defined and used in the FDCPA.

14.     ZPM through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

15.     Defendant Premier Holdings Group ("PHG") is an active Texas general partnership, purportedly doing business at 903 North Bowser Road, Suite 250, Richardson, Texas 75081. PHG uses interstate commerce and the mails in a business the principal purpose of which

is the collection of debts. PHG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. PHG is a "debt collector" as the term is defined and used in the FDCPA.

16.     PHG through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

17.     Zenco, ZPM and PHG are collectively referred to as the "Corporate Defendants" in this complaint.

18.     According to the State of Texas Department of Insurance, Division of Workers Compensation, Zenco and ZPM operate from a single location at 903 North Bowser Road, Suite 250, Richardson, Texas 75081, with both entities insured on the same policy issued by Central Mutual Insurance Company. The application will need to be obtained in discovery.

19.     Defendant Adam Michael Pasternak is a natural person, age 45, purportedly residing at 1400 Elsa Avenue, The Colony, Texas 75056. Mr. Pasternak also has resided at 1732 Hartford Drive, Carrollton, Texas 75007. Mr. Pasternak uses multiple email addresses when operating his debt collection scam, including: apasternak08@gmail.com and apasternak@premierholdingsusa.com. Mr. Pasternak is an owner, director, officer, member, manager, employee and agent of the Corporate Defendants. Mr. Pasternak uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Pasternak regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Pasternak is a "debt collector" as the term is defined and used in the FDCPA.

20.     Mr. Pasternak (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts

to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Matthews as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Matthews as stated in this complaint.

21.     Mr. Pasternak directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

22.     Defendant Stephen G. McFayden is a natural person, age 45, purportedly residing at 6701 St. Moritz Parkway, Colleyville, Texas 76034. Mr. McFayden is an owner, director, officer, member, manager, employee and agent of the Corporate Defendants. Mr. McFayden uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. McFayden regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Pasternak is a "debt collector" as the term is defined and used in the FDCPA.

23.     Mr. McFayden is licensed by the State Bar of Texas (Bar Card No. 24082137) and the State Bar of Kentucky to practice law. Mr. McFayden has provided the bar associations with the contact email address mcfaydengroup@gmail.com and telephone number 469-980-9756.

24.     Mr. McFayden has held himself out as operating a law office named "Franklin McFayden PLLC," supposedly doing business at 14902 Preston Road, "Suite 404-735," Dallas, Texas 75254, but the address is merely a private mailbox (No. 735) rented by defendants from The UPS Store No. 2804, and is the same private mailbox used by defendants as the fake business address for "Premier Holdings Group."

25.     The Texas Disciplinary Rules of Rules of Professional Conduct, Preamble, Paragraph 4, states: "A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others." Rule 8.04 states: "Misconduct (a) A lawyer shall not: (1) violate these rules, knowingly assist or induce another to do so, or do so through the acts of another, whether or not the violation occurred in the course of a client-lawyer relationship; (2) commit a serious crime or commit any other criminal act that reflects adversely on the lawyers honesty, trustworthiness or fitness as a lawyer in other respects; (3) engage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . ."

26.     Mr. McFayden (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Matthews as stated in this complaint, (e) ratified the

unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Matthews as stated in this complaint.

27.     Mr. McFayden directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

28.     Defendant Stuart Adam Hollingsworth, also known as Adam Hollingsworth, is a natural person, age 34, purportedly residing at 1817 Bosque Drive, Garland, Texas 75040. Mr. Hollingsworth is an owner, partner, officer, member, manager, employee and agent of PHG. Mr. Hollingsworth uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Hollingsworth regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Hollingsworth is a "debt collector" as the term is defined and used in the FDCPA.

29.     Mr. Hollingsworth (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Matthews as stated in this complaint, (e) ratified the

unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Matthews as stated in this complaint.

30. Mr. Hollingsworth directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

31. Defendant Ryan Christopher Rogan is a natural person, age 33, purportedly residing at 2140 San Pablo Drive, Dallas, Texas 75227. Mr. Rogan sometimes uses the email address rrogan87@gmail.com. Mr. Rogan is an owner, partner, officer, member, manager, employee and agent of PHG. Mr. Rogan uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Rogan regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Rogan is a "debt collector" as the term is defined and used in the FDCPA.

32. Mr. Rogan (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Matthews as stated in this complaint, (e) ratified the

unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Matthews as stated in this complaint.

33.     Mr. Rogan directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

34.     Defendant Nanci Denise Ramsey, also known as Nanci Hicks, is a natural person, age 47, purportedly residing at 9821 Sycamore Drive, Little Elm, Texas 75068 or 5953 Greenwood Drive, Little Elm, Texas 75068. Ms. Ramsey is an owner, partner, officer, member, manager, employee and agent of PHG. Ms. Ramsey uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Ramsey regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Ramsey is a "debt collector" as the term is defined and used in the FDCPA.

35.     Ms. Ramsey (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Matthews as stated in this complaint, (e) ratified the

unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants  and their employees and agents, in attempts to collect an alleged debt from Mr. Matthews as stated in this complaint.

36.    Ms. Ramsey directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

37.    Defendant Angel Marie Rodriguez is a natural person, age 48, purportedly residing at 1128 Singletree Drive, Forney, Texas 75126. Ms. Rodriguez is an owner, partner, officer, member, manager, employee and agent of PHG. Ms. Rodriguez uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Rodriguez regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Rodriguez is a "debt collector" as the term is defined and used in the FDCPA.

38.    Ms. Rodriguez (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Matthews as stated in this complaint, (e) ratified the

unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Matthews as stated in this complaint.

39.     Ms. Rodriguez directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

40.     Defendant Emerson Lee Abbott is a natural person, age 57, purportedly residing at 9302 Forest Lane, A104, Dallas, Texas 75243. Mr. Abbott is an employee and agent of PHG. Mr. Abbott uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Abbott regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Abbott is a "debt collector" as the term is defined and used in the FDCPA.

41.     Mr. Abbott (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Matthews as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their

employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Matthews as stated in this complaint.

42. Mr. Abbott directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

43. Defendants currently operate their credit identity theft and debt collection scam using multiple assumed names, including: Premier; Premier Holdings; and Premier Holdings Group.

44. According to the Better Business Bureau, Premier Holdings Group is a debt collection agency operating at 14902 Preston Road, "Suite 404-735," Dallas, Texas 75254, but the address is merely a private mailbox (No. 735) rented by defendants from The UPS Store No. 2804. According to the BBB, defendants use multiple telephone numbers, including: 817-873-0297; 877-348-0990; 877-348-0991; and 949-260-8070.

45. On December 12, 2017, defendants anonymously registered through GoDaddy.com, LLC, the internet domain www.phgusa.net. The domain links to an active website that describes Premier Holdings Group as a debt collection agency, doing business at 903 North Bowser Road, Suite 250, Richardson, Texas 75081, telephone numbers 469-270-9578 and 972-734-5475 (fax).

46. On July 26, 2017, defendants anonymously registered through GoDaddy.com, LLC, the internet domain www.premierholdingsusa.com. The domain links to an active website that describes Premier Holdings Group as a debt collection agency, doing business at 903 North

13

Bowser Road, Suite 250, Richardson, Texas 75081, telephone numbers 469-270-9578 and 972-734-5475 (fax). Defendants use the domain to communicate by email with their victims, using the address docs@premierholdingsusa.com.

47. On August 20, 2015, defendants anonymously registered through GoDaddy.com, LLC, the internet domain www.zencocollects.com. The domain previously linked to a now defunct website that described Zenco Collects LLC as a debt collection agency, with a mailing address P.O. Box 851733, Richardson, Texas 75081, telephone number 844-368-6626, and email address sales@zencocollects.com.

48. Defendants have used multiple telephone numbers to operate their credit identity theft and debt collection scam, including: 210-714-5259; 210-714-9882; 409-812-2367; 469-289-9054; 469-802-4581; 469-998-9128; 682-284-1494; 682-284-1750; 682-316-0398; 682-628-8038; 816-607-5340; 816-607-5342; 817-203-7231; 877-348-0990; 877-348-0991; and 972-310-2278. Defendants have obtained their telephone service through multiple VoIP providers, including Exiant Communications LLC, 1515 Park Center Drive, Orlando, Florida 32835, and Voip Street Inc., Eight Penn Center West, Suite 101, Pittsburgh, Pennsylvania 15276. These service providers enable defendants to operate their fraudulent scheme. Defendants' subscriber information, additional telephone numbers, and other information will need to be acquired from these service providers in discovery.

49. Defendants' employees and agents have used multiple aliases to operate their credit identity theft and debt collection scam, including: Jeff Waters; Kevin Holt; Robert Holiday; Darren Smith; Ryan Reynolds; Curtis Martin; Laura Adams; and Becky Cooper.

50. Defendants previously operated their credit identity theft and debt collection scam

through a now defunct entity named Consumer Asset Management, Inc., a Texas corporation, TIN 3205608xxxx, formed on or about January 9, 2015, and doing business at defendants' current business location, 903 North Bowser Road, Suite 250, Richardson, Texas 75081.

51.     Consumer Asset Management, Inc. filed a voluntary Chapter 7 bankruptcy on July 7, 2016, after being sued in a class action lawsuit for running the same scam that is described in this complaint. *In re Consumer Asset Management, Inc.,* U.S. Bankruptcy Court, Northern District of Texas (Dallas), Petition No. 16-32733-sgj7. Consumer Asset Management, Inc. was represented in the matter by its "General Counsel," defendant Stephen Gray McFayden.

52.     The Corporate Defendants have been sued multiple times in federal court for operating the same credit identity theft and debt collection scam that is described in this complaint, including: *O'Neil v. Zenco Collections LLC,* U.S. District Court, Eastern District of Michigan, Case No. 2:2015-cv-14040; *Orr v. Zenco Collections LLC,* U.S. District Court, District of Arizona, Case No. 2:2016-cv-2893; *Benson et al. v. Zenco Collections LLC et al.,* U.S. District Court, Northern District of Illinois, Case No. 1:2017-cv-5220; *Arnett v. Premier Holdings Group et al.,* U.S. District Court, Southern District of Ohio, Case No. 3:2018-cv-376; *Keen v. Zenco Collections LLC,* U.S. District Court, Western District of Texas, Case No. 5:2017-cv-1046; *Rust v. Zenco Collections LLC,* U.S. District Court, Central District of California, Case No. 5:2017-cv-1945; and *Santillan v. Zenco Collections LLC,* U.S. District, Eastern District of California, Case No. 1:2017-cv-1255.

53.     Defendant DeVille Asset Management LTD ("DeVille"), also known as DeVille Asset Management, L.P., is an active entity, purportedly doing business in Colleyville, Texas. DeVille uses interstate commerce and the mails in a business the principal purpose of which is

the collection of debts. DeVille is a "debt collector" as the term is defined and used in the FDCPA.

54.     On September 13, 2018, the Securities and Exchange Commission filed a lawsuit against DeVille and others in connection with DeVille's participation in a massive ponzi scheme. *SEC v. Kevin B. Merrill et al.,* U.S. District Court for the District of Maryland, Case No. RDB-18-2844. As stated in the First Amended Complaint, DeVille and its owners and operators stole information from portfolios of millions of delinquent consumer accounts, and used that information to create millions of counterfeit delinquent consumer accounts. DeVille is in receivership, but continues to attempt to collect consumer debt, through its own employees, as well as through third-party debt collectors.

55.     DeVille through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

56.     Plaintiff is proceeding against defendants collectively under a common enterprise theory, under which "each entity within a set of interrelated companies may be held jointly and severally liable for the actions of other entities that are part of the group." *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014). To determine whether a common enterprise, or a "maze of interrelated companies," exists, courts consider "the pattern and framework of the whole enterprise." *Delaware Watch Co. v. F.T.C.*, 332 F.2d 745, 746 (2d Cir. 1964). Although no one factor is controlling, relevant factors include whether the corporate defendants "(1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing." *Tax Club, Inc.*, 994 F. Supp. 2d at 469 (citation omitted); *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10-CV-3551(ILG), 2011

WL 3652248, *5 (E.D.N.Y. Aug. 18, 2011). Further, a common enterprise analysis is neither an alter ego inquiry nor an issue of corporate veil piercing; instead, the entities within the enterprise may be separate and distinct corporations. *F.T.C. v Wyndham Worldwide Corp.*, No. 13-1887(ES), 2014 WL 2812049, *5 (D. N.J. June 23, 2014) (citing *F.T.C. v. Direct Benefits Grp.*, No. 11-1186, 2013 WL 3771322, *18 (M.D. Fla. July 18, 2013)).

57.     All defendants, along with other companies, employees and agents to be identified in discovery and named as additional defendants in this lawsuit, are intricately bound together and combine their efforts in a joint and common enterprise and use concerted attempts to collect debts allegedly owed by consumers throughout the United States. Defendants and the other entities operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each participant jointly and severally for the unlawful acts of each of the other participants.

58.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

59.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including

the training and managing of employees, reviewing or supervising the review of accounts,

materially participating in the activities of the company, supervising collection activities,

overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for

the reason that each such individual is himself a "debt collector" within the statutory definition,

namely, each is a "person" in a business, "the principal purpose of which is the collection of any

debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of*

*Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth*

*Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.    Facts

60.    In or about 2008, plaintiff Jason Matthews obtained and used a line of credit to

purchase goods and services for personal, family and household purposes. In connection with

that account, Mr. Matthews's private, personal and financial information, including Mr.

Matthews's Social Security Number, date of birth, residential address, telephone numbers, and

banking information, was compromised, stolen and unlawfully used to create a counterfeit credit

card account, supposedly issued by Continental Finance, with the Account No.

5206054260258072, and a related, counterfeit, unpaid debt.

61.    The perpetrators included Mr. Matthews's counterfeit account in multiple

portfolios containing thousands of other counterfeit credit card accounts, and then sold the

portfolios to, or otherwise placed the accounts with, multiple criminal enterprises across the

country, to be used to contact and threaten consumers with litigation, prosecution and other

adverse consequences, in efforts to extort the payment of money from the identity theft victims.

62.     Upon information and belief, one of persons that may have been involved in the creation of the portfolios of counterfeit accounts has the initials BRB and resides in South Carolina, but that will need to be determined through discovery.

63.     Mr. Matthews denies owing any money to Continental Finance or any other entity in connection with the account.

64.     A Bank Identification Numbers or "BIN" is the initial four to six numbers that appear on a credit card. The BIN is a part of a numbering system developed by the American National Standards Institute to uniquely identify the financial institution that issues a specific credit card.

65.     The BIN (520605) for Mr. Matthews's counterfeit account is the BIN for "Classic" MasterCard credit cards, issued by The Bank of Missouri and serviced by Continental Finance Company.

66.     According to The Bank of Missouri/Continental Finance Company, Mr. Matthews has never had a credit account with The Bank of Missouri/Continental Finance Company with the number 5206054260258072.

67.      According to The Bank of Missouri/Continental Finance Company, Mr. Matthews has never had any credit account with The Bank of Missouri/Continental Finance Company.

68.     According to The Bank of Missouri/Continental Finance Company, there has never been a credit account issued by The Bank of Missouri/Continental Finance Company with the number 5206054260258072.

69.     According to The Bank of Missouri/Continental Finance Company, Mr.

Matthews's supposed credit card account, number 5206054260258072, is counterfeit.

70.     In or before January 2020, an entity named Liberty Solutions & Associates, LLC ("LSA"), and its related entities, somehow acquired a portfolio of counterfeit accounts that included Mr. Matthews's counterfeit account, along with Mr. Matthews's stolen personal and financial information.

71.     In January 2020, LSA's employees and agents contacted Mr. Matthews by telephone, falsely stated that Mr. Matthews owed $535.00 in connection with the counterfeit account, and falsely threatened Mr. Matthews with litigation, prosecution and other adverse consequences, in efforts to coerce the payment of money from Mr. Matthews.

72.     In February 2020, Mr. Matthews hired an attorney to file a lawsuit against LSA, its related entities, and their employees and agents, for violating the FDCPA, DPPA and other laws.

73.     In February 2020, Mr. Matthews entered into a settlement agreement with LSA and resolved his claims, pre-suit.

74.     As described below, the defendants named in this lawsuit are the most recent group of credit identity thieves and debt collection scam operators to obtain and use Mr. Matthews's stolen personal and financial information to contact and falsely threaten Mr. Matthews with litigation, prosecution and other adverse consequences, in efforts to extort the payment of money from Mr. Matthews to supposedly satisfy a counterfeit account and non-existent debt.

75.     On March 5, 2020, defendants' employee and agent, placed a call from telephone number 737-239-0919 to Mr. Matthews's cellular telephone, spoke with Mr. Matthews,

identified herself as an employee and agent of "Premier Holdings Group," and made the
following representations to Mr. Matthews:

a)    Mr. Matthews owed an unpaid balance of $527.37 in connection with an
unpaid credit card debt to "Continental Finance Banking Corporation,"
Account No. 5206054260258072, that became delinquent in 2008.

b)    Defendants are attorneys and a law firm, hired by their client, "CJA," to
collect the debt from Mr. Matthews.

c)    Defendants filed a two-count lawsuit against Mr. Matthews in his county
of residence for breach of contract and defrauding a financial institution.

d)    The court was going to enter judgment against Mr. Matthews in the
amount of $2,263.81, including penalties, court costs, and attorney fees.

e)    Defendants were going to place a lien on Mr. Matthews's Ford F-150
pickup truck.

f)    Defendants were going to place a lien on Mr. Matthews's residence and
other property.

g)    Defendants were going to file a Form 1099-C against Mr. Matthews with
the Internal Revenue Service for the amount of the unpaid debt.

h)    Defendants were going to cause the unpaid debt to reappear on Mr.
Matthews's credit reports within the next forty-eight to seventy-two hours
and harm Mr. Matthews's credit.

i)    Defendants had placed a hold on Mr. Matthews's income tax refund.

76.    On March 5, 2020, defendants sent an email from docs@premierholdingsusa.com

to Mr. Matthews. The email contained a link to a one-page letter dated March 5, 2020, on the letterhead of "Premier, 14902 Preston Rd Ste 404-735, Dallas, TX 75254, 877-348-0991," addressed to Mr. Matthews, signed by "Robert Holiday, Manager," and referencing: "Re: CJA; Orig Cred: CONTINENTAL FINANCE; Account: 5206054260258027 (1241869) 400; SS# xxx-xx-xxxx; Balance: $527.37." The letter stated in part: "Our client, **CJA** has given Premier the opportunity to accept a payment plan on the above referenced amount." The email also contained a link to a DocuSign document captioned "Certificate Of Completion" that identified the sender of the email as "Premier Holdings, 1732 Hartford Drive, Carrollton, TX 75007" (which is a residential address for defendant Adam Michael Pasternak), and the "IP Address: 12.231.182.226" (which has been registered since September 12, 2015 to Adam Pasternak, Consumer Asset Management, Inc., 903 North Bowser Road, Richardson, Texas 75081, telephone 469-802-4581, email apasternak08@gmail.com). The email also contained a link to a DocuSign document captioned "Electronic Record And Signature Disclosure" that identified the sender of the email as "Zenco Collections" with the email address mvela@zencocollects.com. A copy of the email and documents are attached to this complaint as Exhibit A.

77.     On March 5, 2020, in response to defendants' false threats of litigation, prosecution and other adverse consequences, and solely for the purpose identifying and suing the entities who had acquired Mr. Matthews's stolen personal and financial information, and made the false threats, Mr. Matthews authorized a debit card payment to defendants in the amount of $100.00. The payment was facilitated by defendants' employees and agents who used the aliases "Jeff Waters" at 686-628-8038 and "Kevin Holt" at 877-348-0991.

78.     On March 9, 2020, defendants caused Mr. Matthews's debit card payment of $100.00, plus a processing fee of $4.00, to be transferred from to defendants' merchant account established in the name "Premier Holdings Group," located in Texas, telephone number 972-310-2278. Defendants' run payments obtained from their victims through a credit card payment processor named Network Merchants, LLC, 201 Main Street, Roselle, Illinois 60172.

79.     Defendants regularly and routinely use their merchant account to receive money from consumers victimized by defendants' credit identity theft and fraudulent debt collection scheme, in violation of multiple federal and state laws, in violation of the terms of the contract between defendants and their acquiring bank, and in violation of the terms of the contracts between defendants and Visa and MasterCard. In doing so, defendants are disqualified from having a merchant account at all.

80.     On March 10, 2020, DeVille was contacted regarding Mr. Matthews's alleged account. According to DeVille: Mr. Matthews owes $527.37 in connection with the account; DeVille purchased the account in June 2017 from an unknown entity; DeVille placed the account for collection in January 2018 with defendant Premier Holdings Group; and DeVille would be willing to settle the account for somewhere around $200.00.

81.     DeVille has actual knowledge of the unlawful debt collection tactics used by the Corporate Defendants to collect alleged debts as described in this complaint, but nonetheless, has continued to place alleged debts for collection with the Corporate Defendants and has otherwise authorized the Corporate Defendants to collect debts allegedly owned by DeVille.

has continued to use the Corporate Defendants to collect alleged debts

the account was purchased by DeVille purchased

82.     The above-described threats and representations made by defendants and defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats, extortion, intimidation, and unlawful harassment, often times on debts that are not owed and through the use of unlawfully obtained account and personal information.

83.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

84.     Defendants and their employees and agents falsely represented that Mr. Matthews owed money in connection with a counterfeit account.

85.     Defendants and their employees and agents falsely represented and inflated the amount of Mr. Matthews's alleged debt.

86.     Defendants and their employees and agents falsely represented that Mr. Matthews owed a debt that is not owed.

87.     Defendants and their employees and agents falsely represented the identity of the entity to whom the alleged debt is owed.

88.     Defendants and their employees and agents failed to provide the identity of the entity to whom the alleged debt is owed.

89.     Defendants and their employees and agents falsely represented that they are attorneys and a law firm.

90.     Defendants and their employees and agents wrongfully obtained and wrongfully used information related to a counterfeit account, as well as Mr. Matthews's personal and financial information, in an effort to coerce the payment of money from Mr. Matthews.

91.     Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

92.     Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

93.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Mr. Matthews to collect the alleged debt.

94.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Mr. Matthews to collect the alleged debt.

95.     Defendants and their employees and agents falsely represented that Mr. Matthews had committed fraud.

96.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Matthews had committed a crime.

97.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Matthews was going to be arrested and prosecuted unless Mr. Matthews paid money to defendants.

98.     Defendants and their employees and agents falsely represented and falsely implied that a judgment was going to entered against Mr. Matthews.

99.     Defendants and their employees and agents falsely represented and falsely implied that defendants are attorneys and a law firm, hired by their client, "CJA," to collect the debt from

Mr. Matthews.

100.     Defendants and their employees and agents falsely represented and falsely implied that defendants filed a two-count lawsuit against Mr. Matthews in his county of residence for breach of contract and defrauding a financial institution.

101.     Defendants and their employees and agents falsely represented and falsely implied that the court was going to enter judgment against Mr. Matthews in the amount of $2,263.81, including penalties, court costs, and attorney fees.

102.     Defendants and their employees and agents falsely represented and falsely implied that defendants were going to place a lien on Mr. Matthews's Ford F-150 pickup truck.

103.     Defendants and their employees and agents falsely represented and falsely implied that defendants were going to place a lien on Mr. Matthews's residence and other property.

104.     Defendants and their employees and agents falsely represented and falsely implied that defendants were going to file a Form 1099-C against Mr. Matthews with the Internal Revenue Service for the amount of the unpaid debt.

105.     Defendants and their employees and agents falsely represented and falsely implied that defendants were going to cause the unpaid debt to reappear on Mr. Matthews's credit reports within the next forty-eight to seventy-two hours and harm Mr. Matthews's credit.

106.     Defendants and their employees and agents falsely represented and falsely implied that defendants had placed a hold on Mr. Matthews's income tax refund.

107.     Defendants did not intend to file a lawsuit against Mr. Matthews in any court in efforts to collect the alleged debt.

108.     Even if Mr. Matthews had not paid the alleged debt, the debt would be judicially

unenforceable by operation of the applicable statute of limitations. Stated differently, the account and alleged debt are time-barred.

109. Defendants and their employees and agents wrongfully threatened to file a lawsuit against Mr. Matthews to collect a time-barred debt.

110. The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt. 15 U.S.C. § 1692d.

111. The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person. 15 U.S.C. § 1692d(1).

112. The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity. 15 U.S.C. § 1692d(6).

113. The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the debt collector is vouched for or affiliated with the United States or any State. 15 U.S.C. § 1692e(1).

114. The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A).

115. The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt. 15 U.S.C. § 1692e(2)(B).

116. The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.

15 U.S.C. § 1692e(3).

117.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

118.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

119.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

120.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

121.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

122.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

123.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

124.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

125.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

126.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

127.     Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

128.     The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

129.     Defendants and their employees and agents failed to timely send to Mr. Matthews a notice containing the information required by 15 U.S.C. § 1692g(a).

130.     Each defendant and each defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

131.     Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA.

132. The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

133. Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

134. In connection with efforts to collect an alleged debt from Mr. Matthews, defendants obtained and used personal information regarding Mr. Matthews from an internet skip-tracing database, such as LexisNexis Risk Management, Inc. (Accurint), TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe), or Interactive Data, LLC.

135. The database used by defendants was derived in part from non-public motor vehicle records and searches made with the database are subject to the terms of the Drivers Privacy Protection Act. Subscribers to the database must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to use the database, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.

136. The DPPA was enacted in response to growing concerns over the ease with which

stalkers and other criminals could obtain personal information from state departments of motor

vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

137.    The DPPA states:

(a) Procurement for unlawful purpose. – It shall be unlawful for any person
knowingly to obtain or disclose personal information, from a motor vehicle
record, for any use not permitted under section 2721(b) of this title.

(b) False representation. – It shall be unlawful for any person to make false
 representation to obtain any personal information from an individual's motor
vehicle record.

18 U.S.C. § 2722.

138.    The DPPA also states:

"personal information" means information that identifies an individual, including
an individual's photograph, social security number, driver identification number,
name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

139.    The DPPA also states:

A person who knowingly obtains, discloses or uses personal information, from a
motor vehicle record, for a purpose not permitted under this chapter, shall be
liable to the individual to whom the information pertains, who may bring a civil
action in a United States district court.

18 U.S.C. § 2724(a).

140.    The DPPA enumerates the only "permissible uses" for which personal

information may be obtained.   18 U.S.C. § 2721(b).

141.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose

or use personal information regarding Mr. Matthews.

142.    Defendants used the database to obtain, disclose and use personal information

regarding Mr. Matthews.

31

143.    Defendants made a false representation to the provider of the database to obtain personal information regarding Mr. Matthews that was derived from motor vehicle records.

144.    Alternatively, the entity that obtained Mr. Matthews's personal information from the database and disclosed the personal information to defendants, made a false representation to the provider of the database to obtain personal information regarding Mr. Matthews that was derived from motor vehicle records.

145.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

146.    Defendants knowingly obtained, disclosed and used Mr. Matthews's personal information, obtained from motor vehicle records, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

147.    No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Mr. Matthews's personal information obtained from the database.

148.    No defendant had Mr. Matthews's consent, permission, authorization or waiver to obtain Mr. Matthews's personal information from the database.

149.    A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

150.    The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

151.    Defendants intentionally and wilfully violated the DPPA.

152.    Each defendant was aware, or should have been aware, of the unlawful debt collection practices being used by the other defendants to collect alleged debts.

153.    As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established at trial.

## V.    Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

154.    Plaintiff incorporates the foregoing paragraphs by reference.

155.    Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)    Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)    Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)    Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)    Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

## Count 2 – Drivers Privacy Protection Act

156.    Plaintiff incorporates the foregoing paragraphs by reference.

157.    Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)      Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b)      Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)      Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d)      An injunction prohibiting defendants from further obtaining or using plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)      An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind that contain any of plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4); and

f)      An injunction prohibiting defendants from disseminating plaintiff's personal information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

Dated: May 5, 2020                          /s/ Phillip C. Rogers
                                            Phillip C. Rogers (P34356)
                                            Attorney for Plaintiff
                                            6140 28th Street SE, Suite 115
                                            Grand Rapids, Michigan 49546-6938
                                            (616) 776-1176
                                            ConsumerLawyer@aol.com