UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON MATTHEWS,

               Plaintiff,

v.

ZENCO COLLECTIONS LLC,
ZENCO PORTFOLIO MANAGEMENT INC.,
PREMIER HOLDINGS GROUP,
ADAM MICHAEL PASTERNAK,
STEPHEN GRAY MCFAYDEN,
CJ ACQUIRE, LLC,
CHRISTOPHER M. ARNOLD, and
JESSICA LYNN ARNOLD,

               Defendants.

_____/

Case No. 1:20-cv-390

HON. ROBERT J. JONKER

<u>FIRST AMENDED COMPLAINT</u>

**I.**      **Introduction**

1.      Plaintiff is a victim of credit identity theft, whose stolen personal and financial

information was used to create a counterfeit credit card account and fake debt. Defendants are

debt collectors and credit identity thieves who acquired and used the stolen information and

counterfeit account to contact and falsely threaten plaintiff with litigation, prosecution and other

adverse consequences, and extort the payment of money from plaintiff.

2.      Defendants have violated the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. § 1692 *et seq.,* and Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721

*et seq*.

3.      Defendants, along with other entities and individuals to be identified in discovery,

1

are involved in a large, elaborate, and ongoing scheme to contact consumers across the country and falsely threaten litigation, prosecution and other adverse consequences unless the consumers pay money to defendants to supposedly satisfy counterfeit, paid, or time-barred debts. Defendants' scheme is sometimes known as "The Shakedown" or "The Shake."

4. These schemes are epidemic and are operated by thousands of entities located in and around Los Angeles, California, Jacksonville and Miami, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South Carolina.

5. On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015.

6. On September 29, 2020, the "Federal Trade Commission, along with more than 50 federal and state law enforcement partners . . . announced a nationwide law enforcement and outreach initiative to protect consumers from phantom debt collection and abusive and threatening debt collection practices . . . [with two new FTC cases against companies that] were trying to collect debts they cannot legally collect or that a consumer does not owe – a practice known as phantom debt collection." See https://www.ftc.gov/news-events/press-releases/2020/09/ftc-state-federal-law-enforcement-partners-announce-nationwide.

7.      Additionally, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft. See also, Consumer Financial Protection Bureau v. Douglas MacKinnon et al., U.S. District Court, Western District of New York (Buffalo), Case No. 1:16-cv-00880FPG, filed November 2, 2016, in which the government alleges that the defendants cheated thousands of consumers out of millions of dollars by running the same type of scam that is described in this complaint.

8.      The Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, makes it a felony to "knowingly transfer, possess, or use, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law . . . ." The act defines a "means of identification" to include an individual's "name, social security number, date of birth," and other information. It is an express violation of the FDCPA to commit a crime in connection with the collection of any debt.

## II.      Jurisdiction

9.      The Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331.

## III.      Parties

10.      Plaintiff Jason Matthews is an adult, natural person. Mr. Matthews is a

"consumer" and "person" as the terms are defined and used in the FDCPA. Mr. Matthews is a "person" as the term is defined and used in the DPPA.

11.     Defendant Zenco Collections LLC ("Zenco") is an active Texas limited liability company, TIN 3205810xxx, formed on or about August 21, 2015, and purportedly doing business at 903 North Bowser Road, Suite 250, Richardson, Texas 75081. Zenco uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Zenco regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Zenco is a "debt collector" as the term is defined and used in the FDCPA.

12.     According to the Better Business Bureau, Zenco Collections LLC, is a debt collection agency, P.O. Box 851733 Richardson, Texas 75081, telephone numbers 469-899-8909, 469-899-8901 and 844-368-6626. The BBB website contains a warning that dozens of consumers have filed written complaints with the BBB, stating that Zenco "uses threats of prosecution, arrest, and/or garnishment for debts to collect on debts as old as 10 years and the firm fails to validate the debts upon consumer request."

13.     Zenco through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

14.     Defendant Zenco Portfolio Management Inc. ("ZPM") is an active Delaware corporation, TIN 3206728xxxx, formed on or about February 6, 2017, authorized to transact business in Texas, and purportedly doing business at 903 North Bowser Road, Suite 250, Richardson, Texas 75081. ZPM uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. ZPM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. ZPM is a

4

"debt collector" as the term is defined and used in the FDCPA.

15.     ZPM through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

16.     Defendant Premier Holdings Group ("PHG") is an active Texas general partnership, purportedly doing business at 903 North Bowser Road, Suite 250, Richardson, Texas 75081. PHG uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. PHG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. PHG is a "debt collector" as the term is defined and used in the FDCPA.

17.     PHG through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

18.     Zenco, ZPM and PHG, along with defendants Adam Michael Pasternak and Stephen Gray McFayden, are collectively referred to as the "Call Center Defendants" in this complaint.

19.     According to the State of Texas Department of Insurance, Division of Workers Compensation, Zenco and ZPM operate from a single location at 903 North Bowser Road, Suite 250, Richardson, Texas 75081, with both entities insured on the same policy issued by Central Mutual Insurance Company. The application will need to be obtained in discovery.

20.     Defendant Adam Michael Pasternak is a natural person, age 45, purportedly residing at 1400 Elsa Avenue, The Colony, Texas 75056. Mr. Pasternak also has resided at 1732 Hartford Drive, Carrollton, Texas 75007. Mr. Pasternak uses multiple email addresses when operating his debt collection scam, including: apasternak08@gmail.com and apasternak@premierholdingsusa.com. Mr. Pasternak is an owner, director, officer, member,

manager, employee and agent of the Call Center Defendants. Mr. Pasternak uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Pasternak regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Pasternak is a "debt collector" as the term is defined and used in the FDCPA.

21.     Mr. Pasternak (a) created the collection policies and procedures used by the Call Center Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Call Center Defendants, (c) oversaw the application of the collection policies and procedures used by the Call Center Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Call Center Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Matthews as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Call Center Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Call Center Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Matthews as stated in this complaint.

22.     Mr. Pasternak directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

23.     Defendant Stephen G. McFayden is a natural person, age 45, purportedly residing at 6701 St. Moritz Parkway, Colleyville, Texas 76034. Mr. McFayden is an owner, director, officer, member, manager, employee and agent of the Call Center Defendants. Mr. McFayden

uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. McFayden regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Pasternak is a "debt collector" as the term is defined and used in the FDCPA.

24.     Mr. McFayden is licensed by the State Bar of Texas (Bar Card No. 24082137) and the State Bar of Kentucky to practice law. Mr. McFayden has provided the bar associations with the contact email address [mcfaydengroup@gmail.com](mailto:mcfaydengroup@gmail.com) and telephone number 469-980-9756.

25.     Mr. McFayden has held himself out as operating a law office named "Franklin McFayden PLLC," supposedly doing business at 14902 Preston Road, "Suite 404-735," Dallas, Texas 75254, but the address is merely a private mailbox (No. 735) rented by defendants from The UPS Store No. 2804, and is the same private mailbox used by defendants as the fake business address for "Premier Holdings Group."

26.     Mr. McFayden (a) created the collection policies and procedures used by the Call Center Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Call Center Defendants, (c) oversaw the application of the collection policies and procedures used by the Call Center Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Call Center Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Matthews as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Call Center Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt

7

collection practices used by the Call Center Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Matthews as stated in this complaint.

27. Mr. McFayden directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

28. The Call Center Defendants have operated their credit identity theft and debt collection scam using multiple assumed names, including: Premier; Premier Holdings; and Premier Holdings Group.

29. According to the Better Business Bureau, Premier Holdings Group is a debt collection agency operating at 14902 Preston Road, "Suite 404-735," Dallas, Texas 75254, but the address is merely a private mailbox (No. 735) rented by defendants from The UPS Store No. 2804. According to the BBB, defendants use multiple telephone numbers, including: 817-873-0297; 877-348-0990; 877-348-0991; and 949-260-8070.

30. On December 12, 2017, defendants anonymously registered through GoDaddy.com, LLC, the internet domain www.phgusa.net. The domain links to an active website that describes Premier Holdings Group as a debt collection agency, doing business at 903 North Bowser Road, Suite 250, Richardson, Texas 75081, telephone numbers 469-270-9578 and 972-734-5475 (fax).

31. On July 26, 2017, defendants anonymously registered through GoDaddy.com, LLC, the internet domain www.premierholdingsusa.com. The domain links to an active website that describes Premier Holdings Group as a debt collection agency, doing business at 903 North Bowser Road, Suite 250, Richardson, Texas 75081, telephone numbers 469-270-9578 and 972-734-5475 (fax). Defendants use the domain to communicate by email with their victims, using

the address docs@premierholdingsusa.com.

32. On August 20, 2015, defendants anonymously registered through GoDaddy.com, LLC, the internet domain www.zencocollects.com. The domain previously linked to a now defunct website that described Zenco Collects LLC as a debt collection agency, with a mailing address P.O. Box 851733, Richardson, Texas 75081, telephone number 844-368-6626, and email address sales@zencocollects.com.

33. The Call Center Defendants have used multiple telephone numbers to operate their credit identity theft and debt collection scam, including: 210-714-5259; 210-714-9882; 409-812-2367; 469-289-9054; 469-802-4581; 469-998-9128; 682-284-1494; 682-284-1750; 682-316-0398; 682-628-8038; 816-607-5340; 816-607-5342; 817-203-7231; 877-348-0990; 877-348-0991; and 972-310-2278. The Call Center Defendants have obtained their telephone service through multiple VoIP providers, including Exiant Communications LLC, 1515 Park Center Drive, Orlando, Florida 32835, and Voip Street Inc., Eight Penn Center West, Suite 101, Pittsburgh, Pennsylvania 15276. These service providers enable the Call Center Defendants to operate their fraudulent scheme.

34. The Call Center Defendants' employees and agents have used multiple aliases to operate their credit identity theft and debt collection scam, including: Jeff Waters; Kevin Holt; Robert Holiday; Darren Smith; Ryan Reynolds; Curtis Martin; Laura Adams; and Becky Cooper.

35. The Call Center Defendants previously operated their credit identity theft and debt collection scam through a now defunct entity named Consumer Asset Management, Inc., a Texas corporation, TIN 3205608xxxx, formed on or about January 9, 2015, and doing business at defendants' current business location, 903 North Bowser Road, Suite 250, Richardson, Texas

75081.

36. Consumer Asset Management, Inc. filed a voluntary Chapter 7 bankruptcy on July 7, 2016, after being sued in a class action lawsuit for running the same scam that is described in this complaint. *In re Consumer Asset Management, Inc.,* U.S. Bankruptcy Court, Northern District of Texas (Dallas), Petition No. 16-32733-sgj7. Consumer Asset Management, Inc. was represented in the matter by its "General Counsel," defendant Stephen Gray McFayden.

37. The Call Center Defendants have been sued multiple times in federal court for operating the same credit identity theft and debt collection scam that is described in this complaint, including: *O'Neil v. Zenco Collections LLC,* U.S. District Court, Eastern District of Michigan, Case No. 2:2015-cv-14040; *Orr v. Zenco Collections LLC,* U.S. District Court, District of Arizona, Case No. 2:2016-cv-2893; *Benson et al. v. Zenco Collections LLC et al.,* U.S. District Court, Northern District of Illinois, Case No. 1:2017-cv-5220; *Arnett v. Premier Holdings Group et al.,* U.S. District Court, Southern District of Ohio, Case No. 3:2018-cv-376; *Keen v. Zenco Collections LLC,* U.S. District Court, Western District of Texas, Case No. 5:2017-cv-1046; *Rust v. Zenco Collections LLC,* U.S. District Court, Central District of California, Case No. 5:2017-cv-1945; and *Santillan v. Zenco Collections LLC,* U.S. District, Eastern District of California, Case No. 1:2017-cv-1255.

38. Defendant CJ Acquire, LLC ("CJA") is an active California limited liability company, registered and formed on or about September 25, 2015. On February 9, 2019, CJA filed a Statement of Information with the California Secretary of State, disclosing that defendant Jessica Lynn Arnold is a Member and the CEO of CJA, and falsely representing that the CJA "Principal Office Business Address" is 1155 Arnold Drive, Suite C-401, Martinez, California

94553, when the address is merely a private mailbox (No. 401) rented from The UPS Store

No. 272. The Statement of Information also stated that CJA is in the business of "Credit

Intermediation," which is a fancy name for debt collection. On July 11, 2019, defendant

Christopher Michael Arnold, in his capacity as a Member of CJA, filed a State of Information

with the California Secretary of State, stating that there are no changes to the Statement of

Information filed by CJA on February 9, 2019. The registered agent for CJA is Elena Bishop,

1610 Tennessee Street, Vallejo, California 94590. CJA uses interstate commerce and the mails in

a business the principal purpose of which is the collection of debts. CJA regularly collects or

attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due

another. CJA is a "debt collector" as the term is defined and used in the FDCPA.

39.     On October 4, 2014, defendant Christopher M. Arnold, using the name CJA, LLC,

registered through GoDaddy.com, LLC, the internet domain www.cjacquire.com. CJA and Mr.

Arnold use the domain to communicate by email using the address carnold@cjacquire.com.

40.     CJA is a member of Receivables Management Association International, a trade

association that represents more than 500 businesses involved in the purchase of delinquent

consumer debt on the secondary market and related debt collection activity.

41.     CJA through its employees and agents directly and indirectly participated in the

efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

42.     Defendant Christopher M. Arnold is a natural person, age 43, purportedly residing

at 2047 Marazzani Drive, Martinez, California 94553. Upon information and belief, Mr. Arnold

is the husband of defendant Jessica Lynn Arnold. Mr. Arnold has used multiple email addresses

when operating his debt collection scam, including: carnold@cjacquire.com,

chris@portfolioag.com, and chrisarnold2007@gmail.com. Mr. Arnold is an owner, director, officer, member, manager, employee and agent of CJA. Mr. Arnold uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Arnold regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Arnold is a "debt collector" as the term is defined and used in the FDCPA.

43.     Mr. Arnold is a member of Receivables Management Association International, a trade association that represents more than 500 businesses involved in the purchase of delinquent consumer debt on the secondary market and related debt collection activity.

44.     Mr. Arnold maintains an internet profile on linkedin.com under the alias "Christopher M. A." at https://www.linkedin.com/in/cj-acquire-llc, that states Mr. Arnold has been employed from October 2014 to the present with CJ Acquire, LLC as a "Receivables Management & Asset Investor" and "Charged-Off Loan Sale Consultant," and has "Facilitated the sale of over 250 Loan Portfolios," including portfolios of charged-off credit card accounts. Mr. Arnold's Linkedin page contains links to dozens of short articles written by Mr. Arnold regarding the sale, purchase and collection of delinquent consumer accounts, with such titles as: "The Differences Between Collectors and Buyers;" "Debt Collection Reputation" (installments I through V); "Finding a Collection Agency;" "Underestimating the Consumer;" and "'Inevitable' Lawsuits." Mr. Arnold is a member of multiple Linkedin groups regarding debt collection, including: "Debt Collection FDCPA-FCRA-FACTA-GLBA-SCRA-TCPA-UDAAP-FTC & CFPB Regulations Forum" and "Debt Collection Issues on Both Sides of the Fence."

45.     Mr. Arnold (a) created the collection policies and procedures used by CJA and its

employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations CJA, (c) oversaw the application of the collection policies and procedures used by CJA and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by CJA, the Call Center Defendants, and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Matthews as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Call Center Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by CJA, the Call Center Defendants, and their employees and agents, in attempts to collect an alleged debt from Mr. Matthews as stated in this complaint.

46. Mr. Arnold directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

47. Defendant Jessica Lynn Arnold, also known as Jessica Lynn Parini, is a natural person, age 37, purportedly residing at 2047 Marazzani Drive, Martinez, California 94553. Ms. Arnold is an owner, director, officer, member, manager, employee and agent of CJA. Ms. Arnold uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Arnold regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Arnold is a "debt collector" as the term is defined and used in the FDCPA.

48. Ms. Arnold (a) created the collection policies and procedures used by CJA and its employees and agents, in connection with their common efforts to collect consumer debts, (b)

managed or otherwise controlled the daily collection operations CJA, (c) oversaw the application of the collection policies and procedures used by CJA and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by CJA, the Call Center Defendants, and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Matthews as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Call Center Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and/or (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by CJA, the Call Center Defendants, and their employees and agents, in attempts to collect an alleged debt from Mr. Matthews as stated in this complaint.

49. Ms. Arnold directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

50. Plaintiff is proceeding against defendants collectively under a common enterprise theory, under which "each entity within a set of interrelated companies may be held jointly and severally liable for the actions of other entities that are part of the group." *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014). To determine whether a common enterprise, or a "maze of interrelated companies," exists, courts consider "the pattern and framework of the whole enterprise." *Delaware Watch Co. v. F.T.C.*, 332 F.2d 745, 746 (2d Cir. 1964). Although no one factor is controlling, relevant factors include whether the corporate defendants "(1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing." *Tax Club, Inc.*, 994 F. Supp. 2d at 469 (citation omitted); *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10-CV-3551(ILG), 2011

WL 3652248, *5 (E.D.N.Y. Aug. 18, 2011). Further, a common enterprise analysis is neither an alter ego inquiry nor an issue of corporate veil piercing; instead, the entities within the enterprise may be separate and distinct corporations. *F.T.C. v Wyndham Worldwide Corp.*, No. 13-1887(ES), 2014 WL 2812049, *5 (D. N.J. June 23, 2014) (citing *F.T.C. v. Direct Benefits Grp.*, No. 11-1186, 2013 WL 3771322, *18 (M.D. Fla. July 18, 2013)).

51.     All defendants, along with other companies, employees and agents to be identified in discovery and named as additional defendants in this lawsuit, are intricately bound together and combine their efforts in a joint and common enterprise and use concerted attempts to collect debts allegedly owed by consumers throughout the United States. Defendants and the other entities operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each participant jointly and severally for the unlawful acts of each of the other participants.

52.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

53.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including

the training and managing of employees, reviewing or supervising the review of accounts,

materially participating in the activities of the company, supervising collection activities,

overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for

the reason that each such individual is himself a "debt collector" within the statutory definition,

namely, each is a "person" in a business, "the principal purpose of which is the collection of any

debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of*

*Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth*

*Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

IV.     **Facts**

54.     In or about 2008, plaintiff Jason Matthews obtained and used a line of credit to

purchase goods and services for personal, family and household purposes. In connection with

that account, Mr. Matthews's private, personal and financial information, including Mr.

Matthews's Social Security Number, date of birth, residential address, telephone numbers, and

banking information, was compromised, stolen and unlawfully used to create a counterfeit credit

card account, supposedly issued by Continental Finance, with the Account No.

5206054260258072, and a related, counterfeit, unpaid debt.

55.     The perpetrators included Mr. Matthews's counterfeit account in multiple

portfolios containing thousands of other counterfeit credit card accounts, and then sold the

portfolios to, or otherwise placed the accounts with, multiple criminal enterprises across the

country, to be used to contact and threaten consumers with litigation, prosecution and other

adverse consequences, in efforts to extort the payment of money from the identity theft victims.

56.     Mr. Matthews denies owing any money to Continental Finance or any other entity in connection with the account.

57.     A Bank Identification Numbers or "BIN" is the initial four to six numbers that appear on a credit card. The BIN is a part of a numbering system developed by the American National Standards Institute to uniquely identify the financial institution that issues a specific credit card.

58.     The BIN (520605) for Mr. Matthews's counterfeit account is the BIN for "Classic" MasterCard credit cards, issued by The Bank of Missouri and serviced by Continental Finance Company.

59.     According to The Bank of Missouri/Continental Finance Company, Mr. Matthews has never had a credit account with The Bank of Missouri/Continental Finance Company with the number 5206054260258072.

60.      According to The Bank of Missouri/Continental Finance Company, Mr. Matthews has never had any credit account with The Bank of Missouri/Continental Finance Company.

61.     According to The Bank of Missouri/Continental Finance Company, there has never been a credit account issued by The Bank of Missouri/Continental Finance Company with the number 5206054260258072.

62.     According to The Bank of Missouri/Continental Finance Company, Mr. Matthews's supposed credit card account, number 5206054260258072, is counterfeit.

63.     In or before January 2020, an entities named Liberty Solutions & Associates, LLC LSA Processing System, LLC, National Landmark Logistics, LLC, Jean Pierre Cellent, Eric

David Dennison and James Cle Dennison (collectively, "LSA"), and others, somehow acquired a portfolio of counterfeit accounts that included Mr. Matthews's counterfeit account, along with Mr. Matthews's stolen personal and financial information.

64.     In January 2020, LSA's employees and agents contacted Mr. Matthews by telephone, falsely stated that Mr. Matthews owed $535.00 in connection with the counterfeit account, and falsely threatened Mr. Matthews with litigation, prosecution and other adverse consequences, in efforts to coerce the payment of money from Mr. Matthews.

65.     In February 2020, Mr. Matthews hired the undersigned attorney to file a lawsuit against LSA, its related entities, and their employees and agents, for violating the FDCPA, DPPA and other laws.

66.     In February 2020, Mr. Matthews through his attorney entered into a settlement agreement with LSA and resolved his claims and LSA, without having to file a lawsuit.

67.     On July 13, 2020, the Federal Trade Commission filed a lawsuit against Liberty Solutions & Associates, LLC, LSA Processing System, LLC, National Landmark Logistics, LLC, Jean Pierre Cellent, Eric David Dennison and James Cle Dennison, and others, in the United States District Court for the District of South Carolina, Rock Hill Division, Case No. 0:20-cv-02592-JMC, pursuant to which the assets of the named defendants were seized and placed in receivership. The FTC action alleges that over a period of several years, the defendants cheated consumers out of $13.7 million, using the same credit identity theft and debt collection scam that is described in this complaint. The FTC action remains ongoing.

68.     As described below, the defendants named in this lawsuit also are credit identity thieves and debt collection scam operators who have obtained and used Mr. Matthews's stolen personal and financial information to contact and falsely threaten Mr. Matthews with litigation,

prosecution and other adverse consequences, in efforts to extort the payment of money from Mr. Matthews to supposedly satisfy a counterfeit account and non-existent debt.

69.     In or before April 2019, defendants CJ Acquire, LLC, Christopher M. Arnold and Jessica Lynn Arnold somehow, and unlawfully, acquired Mr. Matthews's stolen personal and financial information, along with a portfolio of counterfeit accounts that included Mr. Matthews's counterfeit credit card account, supposedly issued by Continental Finance, with the Account No. 5206054260258072, and a related, counterfeit, allegedly unpaid debt.

70.     When CJA, Mr. Arnold and Ms. Arnold acquired Mr. Matthews's stolen personal and financial information, CJA, Mr. Arnold and Ms. Arnold knew, or should have known, that they had no right to possess Mr. Matthews's stolen personal and financial information, and that they had no right to disclose Mr. Matthews's stolen personal and financial information with any other entity.

71.     When CJA, Mr. Arnold and Ms. Arnold acquired a portfolio of counterfeit accounts that included Mr. Matthews's counterfeit credit card account, CJA, Mr. Arnold and Ms. Arnold knew, or should have known, that the account was counterfeit and that they had no right to collect any alleged debt related to the counterfeit account and that they had no right to place the counterfeit account with any debt collector as their agent to attempt to collect money from Mr. Matthews in connection with the counterfeit account.

72.     Despite the foregoing, and according to the Call Center Defendants, on or about April 23, 2019, CJA, Mr. Arnold and Ms. Arnold placed for collection with the Call Center Defendants, a portfolio of allegedly delinquent consumer accounts, that included Mr. Matthews's stolen personal and financial information, along with Mr. Matthews's counterfeit account.

73.     According to the Call Center Defendants, when CJA, Mr. Arnold and Ms. Arnold

placed Mr. Matthews's counterfeit account for collection with the Call Center Defendants, CJA, Mr. Arnold and Ms. Arnold remained the putative owners of the counterfeit account, with the Call Center Defendants to act as agents for CJA, Mr. Arnold and Ms. Arnold in the Call Center Defendants' efforts to collect money from Mr. Matthews, for the benefit of CJA, Mr. Arnold and Ms. Arnold.

74. CJA, Mr. Arnold and Ms. Arnold as principals are liable for the acts taken by the Call Center Defendants as their agents in connection with efforts to collect an alleged debt from Mr. Matthews, under the FDCPA as well as under the common law.

75. On March 5, 2020, the Call Center Defendants' employee, acting as agent for CJA, Mr. Arnold and Ms. Arnold, placed a call from telephone number 737-239-0919 to Mr. Matthews's cellular telephone, spoke with Mr. Matthews, identified herself as an employee and agent of "Premier Holdings Group," and made the following representations to Mr. Matthews:

a) Mr. Matthews owed an unpaid balance of $527.37 in connection with an unpaid credit card debt to "Continental Finance Banking Corporation," Account No. 5206054260258072, that became delinquent in 2008.

b) Defendants are attorneys and a law firm, hired by their client, "CJA," to collect the debt from Mr. Matthews.

c) Defendants filed a two-count lawsuit against Mr. Matthews in his county of residence for breach of contract and defrauding a financial institution.

d) The court was going to enter judgment against Mr. Matthews in the amount of $2,263.81, including penalties, court costs, and attorney fees.

e) Defendants were going to place a lien on Mr. Matthews's Ford F-150 pickup truck.

f)     Defendants were going to place a lien on Mr. Matthews's residence and
other property.

g)     Defendants were going to file a Form 1099-C against Mr. Matthews with
the Internal Revenue Service for the amount of the unpaid debt.

h)     Defendants were going to cause the unpaid debt to reappear on Mr.
Matthews's credit reports within the next forty-eight to seventy-two hours
and harm Mr. Matthews's credit.

i)     Defendants had placed a hold on Mr. Matthews's income tax refund.

76.     On March 5, 2020, the Call Center Defendants, acting as agent for CJA, Mr.
Arnold and Ms. Arnold, sent an email from docs@premierholdingsusa.com to Mr. Matthews.
The email contained a link to a one-page letter dated March 5, 2020, on the letterhead of
"Premier, 14902 Preston Rd Ste 404-735, Dallas, TX 75254, 877-348-0991," addressed to Mr.
Matthews, signed by "Robert Holiday, Manager," and referencing: "Re: CJA; Orig Cred:
CONTINENTAL FINANCE; Account: 5206054260258027 (1241869) 400;
SS# xxx-xx-xxxx; Balance: $527.37." The letter stated in part: "Our client, **CJA** has given
Premier the opportunity to accept a payment plan on the above referenced amount." The email
also contained a link to a DocuSign document captioned "Certificate Of Completion" that
identified the sender of the email as "Premier Holdings, 1732 Hartford Drive, Carrollton, TX
75007" (which is a residential address for defendant Adam Michael Pasternak), and the "IP
Address: 12.231.182.226" (which has been registered since September 12, 2015 to Adam
Pasternak, Consumer Asset Management, Inc., 903 North Bowser Road, Richardson, Texas
75081, telephone 469-802-4581, email apasternak08@gmail.com). The email also contained a

link to a DocuSign document captioned "Electronic Record And Signature Disclosure" that identified the sender of the email as "Zenco Collections" with the email address mvela@zencocollects.com. A copy of the email and documents are attached to this complaint as Exhibit A.

77. On March 5, 2020, in response to defendants' false threats of litigation, prosecution and other adverse consequences, and solely for the purpose identifying and suing the entities who had acquired Mr. Matthews's stolen personal and financial information, and made the false threats, Mr. Matthews authorized a debit card payment to defendants in the amount of $100.00. The payment was facilitated by defendants' employees and agents who used the aliases "Jeff Waters" at 686-628-8038 and "Kevin Holt" at 877-348-0991.

78. On March 9, 2020, defendants caused Mr. Matthews's debit card payment of $100.00, plus a processing fee of $4.00, to be transferred from to defendants' merchant account established in the name "Premier Holdings Group," located in Texas, telephone number 972-310-2278. Defendants' run payments obtained from their victims through a credit card payment processor named Network Merchants, LLC, 201 Main Street, Roselle, Illinois 60172.

79. The Call Center Defendants regularly and routinely use their merchant account to receive money from consumers victimized by defendants' credit identity theft and fraudulent debt collection scheme, in violation of multiple federal and state laws, in violation of the terms of the contract between defendants and their acquiring bank, and in violation of the terms of the contracts between defendants and Visa and MasterCard. In doing so, defendants are disqualified from having a merchant account at all.

80. The above-described threats and representations made by defendants and

defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats, extortion, intimidation, and unlawful harassment, often times on debts that are not owed and through the use of unlawfully obtained account and personal information.

81.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

82.     Defendants and their employees and agents falsely represented that Mr. Matthews owed money in connection with a counterfeit account.

83.     Defendants and their employees and agents falsely represented and inflated the amount of Mr. Matthews's alleged debt.

84.     Defendants and their employees and agents falsely represented that Mr. Matthews owed a debt that is not owed.

85.     Defendants and their employees and agents falsely represented the identity of the entity to whom the alleged debt is owed.

86.     Defendants and their employees and agents failed to provide the identity of the entity to whom the alleged debt is owed.

87.     Defendants and their employees and agents falsely represented that they are attorneys and a law firm.

88.     Defendants and their employees and agents wrongfully obtained and wrongfully used information related to a counterfeit account, as well as Mr. Matthews's personal and financial information, in an effort to coerce the payment of money from Mr. Matthews.

89.     Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

90.     Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

91.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Mr. Matthews to collect the alleged debt.

92.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Mr. Matthews to collect the alleged debt.

93.     Defendants and their employees and agents falsely represented that Mr. Matthews had committed fraud.

94.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Matthews had committed a crime.

95.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Matthews was going to be arrested and prosecuted unless Mr. Matthews paid money to defendants.

96.     Defendants and their employees and agents falsely represented and falsely implied that a judgment was going to entered against Mr. Matthews.

97.     Defendants and their employees and agents falsely represented and falsely implied that defendants are attorneys and a law firm, hired by their client, "CJA," to collect the debt from Mr. Matthews.

98.     Defendants and their employees and agents falsely represented and falsely implied that defendants filed a two-count lawsuit against Mr. Matthews in his county of residence for

breach of contract and defrauding a financial institution.

99. Defendants and their employees and agents falsely represented and falsely implied that the court was going to enter judgment against Mr. Matthews in the amount of $2,263.81, including penalties, court costs, and attorney fees.

100. Defendants and their employees and agents falsely represented and falsely implied that defendants were going to place a lien on Mr. Matthews's Ford F-150 pickup truck.

101. Defendants and their employees and agents falsely represented and falsely implied that defendants were going to place a lien on Mr. Matthews's residence and other property.

102. Defendants and their employees and agents falsely represented and falsely implied that defendants were going to file a Form 1099-C against Mr. Matthews with the Internal Revenue Service for the amount of the unpaid debt.

103. Defendants and their employees and agents falsely represented and falsely implied that defendants were going to cause the unpaid debt to reappear on Mr. Matthews's credit reports within the next forty-eight to seventy-two hours and harm Mr. Matthews's credit.

104. Defendants and their employees and agents falsely represented and falsely implied that defendants had placed a hold on Mr. Matthews's income tax refund.

105. Defendants did not intend to file a lawsuit against Mr. Matthews in any court in efforts to collect the alleged debt.

106. Even if Mr. Matthews had not paid the alleged debt, the debt would be judicially unenforceable by operation of the applicable statute of limitations. Stated differently, the account and alleged debt are time-barred.

107. Defendants and their employees and agents wrongfully threatened to file a lawsuit

against Mr. Matthews to collect a time-barred debt.

108.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

109.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

110.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

111.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the debt collector is vouched for or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

112.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

113.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

114.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

115.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the

seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action. 15 U.S.C. § 1692e(4).

116. The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5).

117. The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

118. The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false. 15 U.S.C. § 1692e(8).

119. The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(10).

120. The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector. 15 U.S.C. § 1692e(11).

121. The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process. 15 U.S.C. § 1692e(13).

122. The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization. 15 U.S.C. § 1692e(14).

123.    The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

124.    The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

125.    Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

126.    The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

127.    Defendants and their employees and agents failed to timely send to Mr. Matthews a notice containing the information required by 15 U.S.C. § 1692g(a).

128.    Each defendant and each defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

129.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA.

130.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15

U.S.C. § 1692(e).

131.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

132.    In connection with efforts to collect an alleged debt from Mr. Matthews, defendants obtained and used personal information regarding Mr. Matthews from an internet skip-tracing database, such as LexisNexis Risk Management, Inc. (Accurint), TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe), or Interactive Data, LLC.

133.    The database used by defendants was derived in part from non-public motor vehicle records and searches made with the database are subject to the terms of the Drivers Privacy Protection Act. Subscribers to the database must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to use the database, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.

134.    The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

135.    The DPPA states:

(a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.

(b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

136.    The DPPA also states:

"personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

137.    The DPPA also states:

A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

138.    The DPPA enumerates the only "permissible uses" for which personal information may be obtained.   18 U.S.C. § 2721(b).

139.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose or use personal information regarding Mr. Matthews.

140.    Defendants used the database to obtain, disclose and use personal information regarding Mr. Matthews.

141.    Defendants made a false representation to the provider of the database to obtain personal information regarding Mr. Matthews that was derived from motor vehicle records.

142.    Alternatively, the entity that obtained Mr. Matthews's personal information from

the database and disclosed the personal information to defendants, made a false representation to the provider of the database to obtain personal information regarding Mr. Matthews that was derived from motor vehicle records.

143.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

144.    Defendants knowingly obtained, disclosed and used Mr. Matthews's personal information, obtained from motor vehicle records, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

145.    No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Mr. Matthews's personal information obtained from the database.

146.    No defendant had Mr. Matthews's consent, permission, authorization or waiver to obtain Mr. Matthews's personal information from the database.

147.    A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

148.    The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

149.    Defendants intentionally and wilfully violated the DPPA.

150.    Each defendant was aware, or should have been aware, of the unlawful debt collection practices being used by the other defendants to collect alleged debts.

151.    As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not

limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established at trial.

## V.    Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

152.    Plaintiff incorporates the foregoing paragraphs by reference.

153.    Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)    Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)    Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)    Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)    Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)    Such further relief as the court deems just and proper.

## Count 2 – Drivers Privacy Protection Act

154.    Plaintiff incorporates the foregoing paragraphs by reference.

155.    Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)    Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b)    Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)    Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d)    An injunction prohibiting defendants from further obtaining or using plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)    An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind that contain any of plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4); and

f)    An injunction prohibiting defendants from disseminating plaintiff's personal information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).


Dated: October 5, 2020                          /s/ Phillip C. Rogers
                                                 Phillip C. Rogers (P34356)
                                                 Attorney for Plaintiff
                                                 6140 28th Street SE, Suite 115
                                                 Grand Rapids, Michigan 49546-6938
                                                 (616) 776-1176
                                                 ConsumerLawyer@aol.com